BONNEY v. ROBERTSON ET AL.

1. SURETY'S LIABILITY.

A surety cannot be held beyond the express terms of his contract.

2. SAME—EVIDENCE.

Where the terms of the undertaking of suretyship are at all ambiguous, the courts are at liberty to look both to the recitals of the instrument and all the circumstances surrounding the parties when the contract was entered into, and may likewise consider the subject-matter of the instrument, and therefrom determine the scope and object of the intended guaranty.

3. SAME—PRINCIPLE APPLIED.

B. was county treasurer and was in the habit of depositing in R.'s bank moneys collected by virtue of his office. For the purpose of securing B. as treasurer "against the loss of any funds which he may have now or at any future time on deposit" in said bank, R. executed a bond with sureties conditioned to pay over when called upon all moneys so deposited. B.'s term of office having expired, he continued in office under appointment and to deposit money in the bank, until its failure and default in payment of money on deposit. *Held*, the sureties were not responsible for the default of the bank happening after the expiration of the term of office which the treasurer was filling when the undertaking was given.

*Error to the District Court of Chaffee County.*

IN JANUARY, 1891, Josiah M. Bonney was the treasurer of Chaffee county, charged with the duty of collecting the taxes due the county and state as provided by statute. William E. Robertson was at that time proprietor of The Chaffee County Bank, doing a general banking business at Salida, where the treasurer's office was located. Bonney deposited the various public moneys which he collected from time to time in The Chaffee County Bank, and to secure him against loss, Robert-

son, with divers other persons who signed the bond as sureties, executed a bond in the sum of fifty thousand dollars, which contained the following condition:

" The conditions of the foregoing obligation are such that, whereas J. M. Bonney, as treasurer of Chaffee county, has and does deposit certain sums of money belonging to the county and state with William E. Robertson, as proprietor of The Chaffee County Bank, from time to time, and for the purposes of securing said J. M. Bonney, as treasurer of said county, against the loss of any funds, which he may have now or at any future time on deposit in The Chaffee County Bank. Now, therefore, if the said William E. Robertson shall in all respects well and truly perform and pay over when called upon all moneys so deposited, then this obligation shall be void, otherwise it shall be and remain in full force and virtue."

The treasurer deposited money from time to time amounting in the aggregate to a very considerable sum. The deposits were continued until the 1st day of July, 1893, when the bank failed and Robertson made a general assignment for the benefit of his creditors. It is important to notice the dates and circumstances under which the money was placed in Robertson's keeping and the position which Robertson held when these deposits were made. Bonney had been elected treasurer prior to the time the bond was given. The term of office, which is regulated by statute, for which he had been elected, expired on the 7th of July, 1892. About this time some change was made in the term of office of county treasurers, and the board of county commissioners, who had authority for the purpose, appointed Bonney as treasurer to serve until the ensuing January of 1893. Under this appointment Bonney, on the 21st of July, 1892, qualified and gave a bond in the sum of fifty thousand dollars for the faithful performance of his duties. His antecedent bond had been for one hundred thousand dollars. There was no new contract between Robertson and his sureties and Bonney after the appointment, and Bonney continued to deposit as

before.   In the ensuing fall, at the general election, Bonney was reëlected to the office of treasurer for the term commencing in January, 1893.   He did not qualify, however, under the election until the ensuing August.   He continued to discharge the duties of the office and still kept his deposits in the bank as before, and at the date of the failure in 1893 had on deposit upwards of $18,000.   All these various facts were set up in the answers filed by the sureties, to which the plaintiff in error demurred.   The demurrer was overruled and judgment entered for the sureties.   The treasurer brings the case here by error.

Mr. C. S. LIBBY·and Mr. G. K. HARTENSTEIN, for plaintiff in error.

Messrs. THOMAS, HARTZELL, BRYANT & LEE, for defendants in error.

BISSELL, J., delivered the opinion of the court.

The judgment is right and the sureties are not liable on their undertaking.   No principle is more firmly settled than that a surety cannot be held beyond the express term of his contract.   Unless he be obligated by the specific terms of his engagement, his liability cannot be extended by implication. The rule is universally applied both in actions at law and in suits at equity and rests upon the most salutary principles. Where the terms of the undertaking are at all ambiguous, the courts are always at liberty to look both to the recitals of the instrument and all the circumstances surrounding the parties when the contract was entered into, and may likewise consider the subject-matter of the instrument and therefrom determine the scope and object of the intended guaranty. *Le Roy et al. v. Servis et al.*, 2 Caine's Cases in Error, 1; *French v. Carhart*, 1 N. Y. 96; *White's Bank of Buffalo v. Myles*, 73 N. Y. 335.

A like principle is expressed in other cases.   In many of

them where the courts have undertaken to determine whether the sureties of a treasurer or deputy should be held liable for defaults occurring after the term for which he had been elected or appointed, whether by public, municipal, or private corporations, they have resorted to the acts of parliament, the statutes, and the proceedings of the boards of directors of private corporations, to ascertain the nature of the office held by the principal, the term for which he was elected or appointed, and therefrom deduced the conclusion that even though the duration of the term was not expressed in the instrument, it was to be taken by the court as within the contemplation of the parties, and therefore presumably was regarded by them as the limit of their security. It is therefore entirely proper for the court to consider the situation and circumstances of these parties as they existed when this bond was given. The instrument perhaps lacks an exact recital, which in some of the decisions has been regarded as the key for the proper interpretation of the instrument, but it contains what will indicate the purpose and intention of the parties as clearly as a definite recital of the term for which Bonney had been elected. The condition recites that Bonney as treasurer has and does deposit money belonging to the county and state with the bank, and the bond was given therefore for the purpose of securing him as treasurer against the loss of any funds which he might deposit. By the demurrer the plaintiff admits Bonney was treasurer when the bond was given, acting as such under a statute by virtue of which his term of office expired on the 7th of July, 1892. We may therefore rightfully conclude the bond was executed for the purpose of securing Bonney against loss during the time for which as treasurer he should receive and deposit money in The Chaffee County Bank. The recital and the situation of the parties fully warrant this conclusion.

The expiration of the term on the 7th of July, 1892, is conceded. The legal effect of this appointment seems to be thoroughly established. All agree if the bond was an official one, it would only be a guaranty against defaults happening

during the term for which the bond was given.   The princi-
ple would be totally unaffected by the circumstance of a re-
election of the same incumbent to the same office for another
term.    Under such circumstances the election would be re-
garded as one to another office.   Though the individual
might be the same, he would in law, with reference to his
bond and his sureties and his defaults, stand in the same
light and occupy the same legal position as though he had
been another and elected as a successor to the first.   *Amherst
Bank v. Root*, 2 Metc. 522.

It only remains then to determine whether by the terms
of the engagement into which the parties entered, they so
expressly and precisely contracted as that the sureties must
be held liable for Robertson's subsequent default.   We do
not so conclude.   There is nothing in the express language
of the instrument which compels any such deduction.   The
contract undoubtedly guarantees Bonney, " as treasurer of
said county, against the loss of any funds, which he may
have now or at any future time on deposit in The Chaffee
County Bank."   We are not at liberty, however, to infer any
intention on the part of the sureties to give or continue an
indefeasible guaranty to protect the treasurer for all time
against the loss of any money which as treasurer he might
deposit in The Chaffee County Bank.   No such absolute
agreement was entered into and there is no language in the
instrument which compels this construction.   Such bonds
are given because of the necessities springing from the offi-
cial positions which individuals hold and the absolute liabil-
ity which they are under for the public moneys which may
come into their hands.   These bonds are executed partly
because of the exigencies of public business, partly from per-
sonal considerations, and from the many diverse but persua-
sive motives which influence human conduct under such
circumstances.   An intention to become a guarantor for all
time may not be inferred.   It is totally contrary to the well
known general purpose and intentions of sureties on this
class of obligations, and it may not be presumed that a re-

election was in contemplation or in the minds of the parties when they signed the bond. Reëlections or reappointments are far from being certainties in public affairs, and the changed conditions which result in this western country in very short periods of time rebut any such expectation. Wherever the question has been discussed, the courts have always given great weight to the consideration of the time for which the party may be bound and the estimate which he is liable to put on the liability likely to devolve on him during that period and his inability to know what may be cast on him at some future and later date. If any other rule were adopted there would seem to be no necessity for an absolute continuity of the term, but a reëlection after an interregnum and a resumption of deposits followed by a default would apparently revive the liability of the sureties and make them guarantors for the later deposits contrary to any actual or apparent intention of the parties. Taking the principle on which the cases rest, we think it may be safely said the general construction of the courts is against this doctrine. *Hassell v. Long*, 2 Maule & Selwyn, 363; *Mayor of Cambridge v. Dennis*, Ellis B. & E. 660 (96 Eng. Com. L. 659) ; *Peppin et al. v. Cooper*, 2 Barn. & Ald. 431; *Kingston Mut. Ins. Co. v. Clark et al.*, 33 Barb. 196; *Citizens L. A. v. Nugent et al.*, 40 N. J. Law, 215; *Hubert v. Mendheim*, 64 Cal. 213; *Chelmsford Co. v. Demarest*, 7 Gray, 1; *Thomas v. Summey et al.*, 1 Jones' Law, 554; *Banner v. McMurray et al.*, 1 Devereux, 219.

The facts pleaded by the defendants constituted a good defense, and if established would relieve the sureties from any liability to respond for the default of the bank happening after the expiration of the term of office which the treasurer was filling when the undertaking was given.

The demurrer was properly overruled, and final judgment must be entered in favor of the defendants in error. The judgment will be affirmed.

*Affirmed.*